Good morning. My name is Emily Cooper and I represent plaintiff appellants in this matter and may I please request two minutes of rebuttal. Okay, please keep track of your time. We'll try to help and as you probably have seen already I'm not inclined to cut people off at the very end. Okay, go ahead. Plaintiffs respectfully request that this court reverse the District Court's modification on two grounds. First, the state failed to meet their burden of proving that a modification was warranted. And second, the District Court failed to suitably tailor its order, including articulating findings of fact and law and how it applied its decision. The standard of review in this case, typically a motion to modify is reviewed based on an abuse of discretion or errors of law. Both parties in this case have cited to the same law to that effect, including Bellevue, this court ruled in 1999. So Ms. Cooper, let me be the first to interrupt you with my apologies, all right. It seems to me that we have some practical considerations here. This is a fast-moving vehicle we're talking about. And I'm not privy to what the current status in Oregon is and how they're monitoring the jails or the hospitals. I can share with you in Brooklyn, we're very close to monitoring Rikers and the Metropolitan Detention Center and all of the facilities here. We get almost daily reports and it gives us a lot of information that we utilize effectively in terms of dealing with these troubled times of ours. What happens in Oregon? Isn't there some sort of daily monitoring situation that is embraced in that state so we know exactly what's happening in the jails at any given time? Your Honor, we don't believe there's a close enough watch on what's happening in our state. If you look at the modification order itself, there's essentially five paragraphs that explain what the court is going to do, the District Court is going to do to monitor compliance. And if you look at the facts and the changed circumstance, those actions aren't taking place. What are the circumstances today? I mean, we have to be realistic. I think we should do something quickly here, my guess is. What is it that you want us to do? Your Honor, plaintiffs request that because the state has argued both in its briefing to this court and in its July report to the District Court that it's essentially in compliance with the seven-day standard, that this court can and should reverse the modification and reinstate the original 2002 order, which articulates the seven-day time period to transport pretrial detainees out of jail and into treatment. Could I ask, I think we are probably reviewing this as of the time that the modification was entered. So there's this retroactive look that puts us in an odd position because it seems like part of your argument is things have gotten better. They aren't even complying with the three every three week reporting requirement. If those things are true and things have gotten better and they're not complying, why not move the District Court to lift the modification? I'm not sure how we can take into account the things in the meantime, but the District Court could. In the record in front of this court, the defendants argue on page 30 of their brief, in footnote two, that since June of 2020, they have maintained compliance with the seven-day standard. And so they have conceded. But so why didn't you, as soon as they wrote that, go to the District Court and say, look at this statement, please lift the modification? Your Honor, we've done that and I can work with Mr. Whitehead to do supplemental briefing. But in the last state motion to halt admissions to the state hospital, we issued briefing to say we don't need to do this anymore, Your Honor. The state has been largely in compliance. We're a different phase than we were a year ago when this modification was put into place. And that was dismissed. And the order to halt admissions was again granted. So did you file your own motion? I mean, maybe that doesn't, it sounds like this was in your response to their motion. That's correct. That's correct. And so why, frankly, why we're in front of this court is we believe that while federal courts need to be careful, like the Supreme Court said in Horn v. Flores about directing state action, and there they were directing the state budgets and local budgets. Here, what we're imploring is that the foundational constitutional principle that was first articulated by the Supreme Court in Jackson v. Indiana in 1972 be applied because that has been eviscerated over the past. I don't understand this. The seven-day provision is not a constitutional provision for my reading of the law. You seem to suggest that's a constitutional issue here. But the True Blood case says to the contrary, that it's not a constitutional issue. There's some wiggle room here. I also want to inquire, don't you have a status conference scheduled for, I think, May 17th before the district court? I'll get to both of those points, Judge Black. First, on the status hearing, yes, we have one scheduled. The last one was scheduled in November and lasts less than 15 minutes. Plaintiffs raised some of our concerns regarding compliance, and we've repeated the constitutional harm that is happening every day to pretrial detainees in jail, and that's gone unavailable. So that's to answer to your status conference. But True Blood is distinguishable for one primary reason. The appeal that came to this court there was about the initial evaluation. And so the law that grounds these cases was articulated by the Supreme Court in Jackson v. Indiana, which is the duration and nature of someone's confinement has to bear a reasonable relationship to why someone's confined. In True Blood, they were talking about initial evaluations, and the state argued that the logistics to provide an initial evaluation was difficult to do in seven days. And so the Ninth Circuit remanded it back to Judge Peckman to say, you need to articulate why it is reasonable, based on the party's interest in the logistics around initial evaluation, why seven days is reasonable. But in True Blood, notably, the seven days for people found not able, so mentally ill they can't aid and assist in their own defense, that seven-day standard still applied in True Blood. Well, realistically speaking, this is a COVID dynamic. It's unusual. We're all challenged by it. Every court, you have no idea what's going on in Brooklyn. I don't want to burden you with that. We have to monitor these problems also. But don't we have to really understand exactly what the status is today, what the incidence of COVID problems are today in the state hospitals, let alone in the jails? How can we make that determination as a circuit court? Isn't that the work of a district court? We can give them some strong instructions, perhaps, or some strong guidance, but don't we have to go back to the district court? Robert, no, and for two reasons. First, if you look at the Ninth Circuit's decisions in both Bellevue and Arsico, the facts were very similar and the legal questioning was very similar. They applied the RUFO standard to whether or not the moving party met their burden in a Rule 60 modification. And in both of those courts, the Ninth Circuit said, yeah, there was an evidentiary hearing and there's full briefing, so the appellate court can and should issue a remand if it's necessary. So that's why our first request is that this court simply reverse without a remand. But certainly in the alternative, if you think that a factual record needs to be further developed, then a remand would be appropriate. The reason that's not our first argument is because of the constitutionally cognizable harm that is happening every day and the record that's before this court. And so if are we reviewing the decision, though, as of the time the modification was entered? Yes, Your Honor. And so when you look at when the modification was entered. Pardon me, judges. Looks like we've just lost Judge Block. Yes, I see that. Why don't we interrupt the argument for just a moment till we can retrieve Judge Block. OK, I'll give a call. Thank you. OK. OK, now, for the record, we got interrupted because of a power failure in Judge Block's chambers. We're now back on the record and continuing argument. And Ms. Cooper, if you can pick up where you left off, if you can remember. I think I had just asked about whether we're reviewing as of the time the modification was entered, and you were about to answer that. Yes, Judge Freeland. And so if you look at the time that the modification was entered, we feel that the state failed to meet their burden of proving that compliance with the original injunction was both not workable. And if they were to comply with the injunction, it would be detrimental to the public interest. So if you look at what was happening at the time of the modification, as early as March 2020, plaintiffs were urging the state to consider other alternatives to compliance other than their sole reliance on admission to the state hospital. Now, back to Judge Block's point, there's no disagreement that a COVID-19 pandemic is a changed circumstance. But what RUFO requires is the moving party to say then why, whether or not it's still, with that changed circumstance, not workable. And we tried to impress upon the state all of the different options it could reach compliance, including looking at outpatient restoration programs, discharging patients who are at the hospital who no longer needed to be there. So I have trouble fathoming that there wasn't reason for some modification in the spring of 2020. And I thought that parts of your brief even seemed to acknowledge that. I mean, maybe there were better ways it could have been modified. But are you really arguing that no modification was necessary at all? No, Your Honor. In fact, we, in our briefing and at the district court level, we've actually applauded the state's efforts to protect patients in the state hospital. Careful admission criteria during a global pandemic is absolutely prudent. We wanted, and then what else? Just that alone wasn't sufficient to show that it wasn't workable. Because what you had left then were prospective patients whose nature and duration of confinement in jail was the sole purpose of getting restoration mental health services from defendants. So a modification could have been appropriate, which it does seem like you're rightly acknowledging. What do you think we should tell the district court it needed to do in the health emergency? What what did it do wrong and that we can correct now? Your Honor, what we would have wanted to see in the modification is similar to what we saw in the 2002 original injunction, which is the Constitution requires timely transport as soon as practicable within a certain period of time. And here the seven days has been established. But you've kind of I think you've acknowledged the seven days maybe needed to be modified. I mean, it seems that there were a lot of new burdens that made the seven days hard to comply with once COVID kicked in. So maybe we should say it needed to say as soon as practicable because I'm not sure I don't see that in the order. So is that general language? Would you like us to say really this should have said as soon as practicable? In the modification and in the hearing, the district court did talk about as soon as practicable. And we'll also return to the seven day standard when we can, when the state reaches compliance. And here again, the state has reached compliance, but didn't inform the court. But to get to your point, Judge Freeland, you can discharge a patient from jail to competency restoration within seven days. The state did not prove their burden of why that wasn't workable. They didn't meet their burden of why they couldn't create another facility to transport within seven days and why that wasn't workable. But how do you create a facility immediately? I mean, that takes some time. So it seems like you at least need some period of time to adjust to COVID. You're right, Your Honor. And if you look at Deputy Director of Oregon State Hospital, Derek Weir's declaration, which is found in the supplemental excerpt of records around 25 through 29, he talks about the Northwest Regional Reentry Center as having dozens of beds for prospective patients. And so if there is a facility that exists that we could, again, transfer those patients in seven days, that is another workable solution to achieve compliance. And keep in mind, Your Honors, we haven't even gotten to whether or not compliance with the injunction would be detrimental to the public interest and the changed circumstance. And so what RUFO and its progeny did is it demanded that district courts, when there is a change in circumstance and the state meets its burden that it's not workable and to comply would be detrimental to public interest, which I still don't believe. You know, it always seems to me, Ms. Cooper, that you always needed a monitor, somebody to be appointed to really watch what's going on on a day-to-day basis. Do we have the authority to perhaps direct the district court to do such a thing? Yes, Your Honor. I argue that at the hearing as well. There are people who help state governments all the time, help achieve compliance, and there were people at the time of the pandemic that were helping other states achieve compliance. I suggested those individuals and did not get a ruling on. You know, in a way, what I think you really are asking is for us to somehow tell the district judge, hey, would you pay a little closer attention to this? Yes, Your Honor. You know, because the district court discussed a closed watch initially a year ago, but that closed watch has dissipated. And so I think a remand in the alternative is absolutely a solution, but again, you have a full evidentiary record now. Oh, I'm reluctant on that one, you know, because as a court of appeal, there are all kinds of factual things that we don't know or think we might know, but maybe we don't. Why don't we hear from the other side, and you've got a minute or so, and we'll make sure you get a chance to respond. Your Honor, if I could just say one more thing, and mindful of time, is if Judge Mossman did articulate that in his modification that it's temporary, and as soon as the state reaches compliance, we would go back to the original order. So showing deference to that direction that indicated his modification again gives this panel the authority to say, okay, district court, you said it's temporary. It's when the state reaches compliance. Well, they've briefed us and given us a record that shows compliance. How do we know that they reach compliance? I'm a little bit unclear about that. There's two places to look, Judge Block. First is the state's argument on page 30, footnote 4, footnote 2, and then also in the excerpts of record 37. And I'll reserve the remaining of my time for rebuttal. Thank you. Okay. Thank you. And now Mr. Whitehead. May it please the Court and Counsel Carson Whitehead for the Oregon Health Authority and the Oregon State Hospital. So I imagine the Court has a lot of practical questions, and some questions about what's currently happening. I think under the standard of review, really this Court is looking at where the modifications justified at the time the Court entered the modifications and whether the trial court, the district court, abused its discretion in making that decision in June, in May and June of last year. And the plaintiffs have shown no abuse of discretion by the trial court. So can I ask you, though, why wasn't there an end date or at least an end concept, like perhaps at the very least once the pandemic is declared over by the CDC or something like that? There's no end. And I had trouble finding any example of a modification from a district court that had no end. Can you point me to some example that would show that having no end date is appropriate? Well, I think the district court was mindful of that the pandemic was ongoing and that the need to modify the admissions process that the modifications ordered, that that was ongoing and the end date of the pandemic wasn't foreseeable at the time. And when we filed our… Well, why not at least put a concept, like something that would be determinable, like whether it's a WHO or CDC or something? I mean, there is a way to have a concept of an end date, even if you don't know the specific date. Well, I think the modifications do have a concept of an end date. It's when the hospital returns to compliance and these admissions processes are no longer required. And that point, the modifications are still in effect. The admissions monitoring units that were authorized, the quarantining and testing process that were authorized are still in effect. And the state hospital is still, like the rest of the country, is still battling COVID concerns. So I think there's flexibility in the end date. It wasn't intended to be in perpetuity. How can we tell that from the modification order itself? It doesn't contain a fixed date. It does require keeping the district court notified and that the injunction, that the modifications will end at the time I think that the hospital is able to come back into compliance and the modifications are no longer needed. So it certainly is a flexible concept. Where does it say, maybe I just missed it, but where does it say that once the hospital is back in compliance, this will end? So I think paragraph four says, inform the court if and when defendants eliminate the backlog of aid and assist patients and achieve compliance with the injunction. Do you agree with your adversary that we have compliance now? She seems to point to the record and make statements that it's in compliance now. Why not move on? Well, so your honor, we just had, we filed a status report, I believe on April 26 with the district court. There's a hearing coming up. I'm not sure the present, like the numbers as of today, and those numbers aren't in the record. So I think the key with the modifications weren't intended to go away immediately upon the first incident that the state hospital was able to admit the criminal defendants within seven days. Again, the plaintiffs could have moved for that. What you were pointing to in paragraph four says, tell me if you're doing better, but it doesn't say I will end this modification once you tell me that. Well, and as we included with our proposed modifications said that we would, we request modifications as long as this process remains medically necessary, like as we need to continue the process of quarantining and testing incoming patients. And also, I mean, we wanted to be able to have flexibility to deal with ongoing, if there were outbreaks to deal with ongoing concerns related to the pandemic. But again, the judge Mossman made clear at the hearing that seven days is always the goal. And that, and so I want to push back at the site. I mean, in your brief, you said that the concept of as soon as practicable is still in the injunction, but I don't see it in the modified order. So where are you getting the idea that there are still these notions of seven days or as soon as practicable? Well, we didn't ask the court to lift those requirements from the original injunction. I mean, what we wanted was a temporary reprieve from the seven day requirement and our motion to modify didn't seek to say that, well, to change the as soon as practical language from the conjunction. Let me interrupt because I guess that's what my job description is with my apologies. You know what's going on there. I don't know in Brooklyn what's going on. What do you think realistically should be done now to resolve this issue? You have a status conference that's going to be scheduled in a week or so. You have all sorts of reports. But tell me on the ground, what do you think should be done now? Well, I think this court should affirm the district court's modifications to the injunction. And on the ground, the hospital is continuing to admit patients as quickly as it can, while still keeping the hospital safe from the pandemic. So I'm sorry, can I bring you back? In fact, I really wanted to hear the answer to my question, which is it sounds like you're saying you think this modification didn't really supersede the injunction. It sounds like you think there's part of the injunction that is still in effect even with this. I guess I had read this one through four modification as really the substitute situation, not part of the injunction is still in effect. Can you explain what you think is going on with that? Your Honor, the due process requirements embodied by the original Meek injunction to admit agonist defendants in a reasonable, timely manner and as soon as practicable remain in effect. How do we know that? Based on, well, I think reading the district court's statements at the hearing where it graded the injunction, what we had requested was not that the Meek injunction go away. We asked for reprieve from the seven day timeline. I mean, this says defendants must comply with the following parameters until such time as they're in compliance with the injunction. That doesn't sound like the district court is expecting you to right now be in compliance with the injunction. The district court, I think, made clear at the hearing that the state's goal is to work through the wait list and admit agonist defendants within seven days of the time an Oregon trial court signs an order. That has always been the state hospital's understanding of its obligations under the Meek injunction. We did not read the injunction, the modifications as saying there are no deadlines for admissions to the state hospital. And what has happened when, and several times since the filing of this appeal, when the state hospital saw that it was needing to pause admissions when there was a COVID outbreak, it notified the court of that and specifically asked the court, filed a motion to pause admissions to the state hospital. So we viewed us as having the obligation to admit agonist patients as quickly as possible. Are any patients being admitted now? What are we talking about as a practical, realistic matter? Is it happening now or is there a total freeze and how many people are affected? Patients are presently being admitted to the state hospital. Our last update to the trial court was that we are admitting patients as quickly as we can. We had filed a request to pause admissions and that's currently, the trial court did allow us to pause admissions if I'm remembering correctly. So currently they're paused. As of today's date, your honor, I'm not sure. We had recently asked the latest, the latest status report I have from April 26 is that the state hospital had admitted a cohort of patients that week and that it would be able to admit a cohort of patients the following week. Can I ask you, the modification required updates every three weeks, but from the docket, it does not seem like that has occurred. Can you explain why? The district court, after subsequent hearings, I believe, and after July, the district court put us on a, extended that to a three month schedule and then asked the parties to keep the court informed if anything significant changed. Has it even been three months? I think when we tried to figure out whether this modification was in place by looking at the docket, we just saw like a void of nothing happening for quite a long time. Has it actually been that you've updated every three months? So, so I think after in November, the judge, the district court set it out another six months and asked for a report to make. Since then, we had gone back and updated the court. And late in the year, we did ask on several occasions to pause admissions and which the trial court did authorize in light of outbreaks in the hospital. So, so we have, we've been in front of the judge probably half a dozen times, but the judge did space out the, the mandated reports. But I think that's consistent with, with how the, the Supreme Court case law talks about, you know, kind of things like reports that, that that's within the trial court's discretion to change. And that, and that hasn't been, you know, that those changes haven't been challenged by plaintiffs. Like, and plaintiffs haven't gone back and asked for the court to dissolve the modifications either. So it seems, I'm a bit confused by, it seems like the plaintiffs want as soon as practicable requirement. And you think there already is an as soon as practical requirement. Is there room for a settlement here? I mean, could, could you guys mediate this and come up with what would be appropriate? Because it sounds like there's a bit of a disconnect about what each of you thinks you want and is happening already. Well, I, I know that our, our, at the trial court level in front of the district court are the, the attorneys from my office and the attorneys from Ms. Cooper's office are in regular contact about this case and are, are talking on a very regular basis. And that, that plaintiffs receive updated information from the state hospital, what's going on, on a regular basis. And so those sorts of conversations I think are ongoing. I think Judge Friedman is trying to inquire. We do have a mediation process here. And many times it's been very effective in dealing with tensions. This may be one of those, I don't know. But would you be amenable to sitting down with professional mediators here and see whether you can reach a resolution as quickly as possible? Certainly, Your Honor. I take it you agree as well, right? Yeah. I do want to just to briefly emphasize that the factual findings for the need for initial modifications, I think are, are well supported. I think that the plaintiffs acknowledge that something needed to be done here. They disagree really with, with what was done. And this idea that the state hospital could have, you know, increased capacity elsewhere is really not supported by the record. And there's no, no basis to reverse based on a factual issue. So then again, whether the injunction is suitably tailored, I think this, the modifications show that the district court was very mindful of the need to admit Adenis's patients as quickly as it could, as the state hospital could. And that the modifications were tailored to meet the demands of the pandemic, particularly looking at it as of the time the modifications were entered last spring. So the court has no further questions. We ask that you affirm the district court's modifications. Thank you. Okay, thank you. Thank you very much. Why don't we put two minutes on the clock for Ms. Cooper? Thank you, Your Honor. So starting first with the, an error of fact, Mr. Whitehead just argued that there's nothing in the record to suggest that compliance was otherwise workable. What I'd point you to is the state supplemental excerpt of records 52 through 53, where they admit that in 2019, they requested from the legislature $20 million to increase community restoration, the exact alternative that we've urged them to consider in March of 2020. And that not only did they have that, those funds, $20 million, but that it was their long-term goal to expand community restoration. So this is the state's own goal, and they had the money to do it. But in the very next sentence, they say, but out of necessity, the state's going to focus its immediate attention to the pandemic. But my question then and now is the state has an obligation, a long-held obligation to provide constitutionally adequate care. And if they had the money and the goal to provide that care that didn't rely on the state hospital, why was that considered not a workable solution for purposes of compliance with the original injunction? And the second point that Mr. Whitehead raised is that plaintiffs are not arguing there's abuse of discretion, and that's not clear based on the pleadings. We talked about the errors of law that the district court made on pages 13 through 20 in our brief to this court. And quickly, because of time, I'll just point to a couple of those errors. First and foremost, the district court went beyond the scope of Rule 60. In the hearing on the motion to modify found on Exempt of Records 72 through 73, the court poses this question. I have to decide whether seven days embodies a constitutional principle or a prophylactic one. That is not an appropriate inquiry for a Rule 60 motion. Indeed, if you look at the original injunction, Judge Panner said that there has to be that reasonable relationship of confinement, which the courts have upheld, and that persons who are found unfit to stand trial, even for a short amount of time, suffer constitutionally cognizable harm. And nowhere in the modification does the district court tailor or address its modification to recognize that harm. And based on those errors, we think this court may reverse that modification. And again, as Judge Mossman seemed to indicate, this was a temporary modification. A year has passed. It is now time for the court to visually enforce federal law and ensure that pretrial detainees are not placed in jail, which, by the way, is a changed circumstance for them, too. They're at risk of COVID transmission. Nowhere in the record is that interest or that harm recognized as the original injunction did. And for these reasons, given the constitutionally cognizable harm, the time that has passed, a lack of standards in the modification, plaintiffs request a reversal of the 2020 modification and a reinstatement of the original order. Thank you. Okay, thank both sides for your helpful arguments. The case of Oregon Advocacy Center and Metropolitan Public Defender Services versus Allen is now submitted for decision. We've got one more argument on the calendar this morning. Food and Water Watch and Snake River Waterkeeper versus United States EPA.
judges: W. Fletcher, Friedland, Block